# EXHIBIT 1

4/21/2021 9:27 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 52666696
By: Carolina Salgado
Filed: 4/21/2021 9:27 AM

# 2021-23625 / Court: 152

CASE NO. _____

| | | |
|---|---|---|
| **KAFI, INC.,** | ) | **IN THE DISTRICT COURT** |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | **_____ JUDICIAL DISTRICT** |
| **FEDERAL NATIONAL MORTGAGE** | ) | |
| **ASSOCIATION; AND NEW** | ) | |
| **RESIDENTIAL MORTGAGE, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | **OF HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW the Plaintiff, KAFI, Inc. ("Kafi"), complaining of the Defendants as named above, and would show the court:

### I. THE PARTIES

1.      Plaintiff Kafi, Inc. is a Texas Corporation with an address of PO Box 79581, Houston, TX 77279.

2.      Defendant, Federal National Mortgage Association (hereafter "Fannie Mae"). Plaintiff is informed and believes, and thereon alleges, that Fannie Mae is a national association doing business in the County of Harris, State of Texas, and is the purported mortgagee for the mortgage loan that is the subject of this Petition. Fannie Mae may be served with process by serving a person authorized to receive service at 5600 Granite Parkway, Plano, Texas 75024.

3.      Defendant, New Residential Mortgage, LLC (hereafter "New Residential"). Plaintiff is informed and believes, and thereon alleges, that New Residential is a company doing business in the County of Harris, State of Texas, and is the purported mortgage servicer for the mortgage loan that is the subject of this Petition. New Residential may be served with process by serving their

PLAINTIFF'S ORIGINAL PETITION

Texas registered agent: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## II. JURISDICTION

4.      The transactions and events which are the subject matter of this Petition primarily occurred within the County of Harris, State of Texas and affected the property the subject of this Petition which is located within the County of Harris, State of Texas at 12314 Ashling Drive, Stafford, TX 77477 (the "Property").  Kafi is the current owner by Constable's Deed to the Property, legally described as:

LOT TWENTY-TWO (22), IN BLOCK SIX (6) OF MEADOW VILLAGE, SECTION ONE (I), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 278, PAGE 104 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

5.      Venue is proper in Harris County, Texas pursuant to Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code.  So long as venue is proper against any one defendant, the Court has venue against other defendants because Kafi's claims arise out of the same transaction, occurrence, or series of transactions. *See* Tex. Civ. Prac. & Rem. Code §15.005.

6.      The amount in controversy is within the jurisdictional limits of this Court.

7.      This Court has personal jurisdiction over all parties.

## III. INTRODUCTION

8.      Kafi contests the title and ownership of the subject mortgage loan in Defendants and their agents and nominees, due to an incomplete and broken chain of assignments and transfers. Alternatively, Kafi requests a declaration that the statute of limitations has run on any foreclosure action under the subject mortgage loan. The court must quiet title to the Property in Kafi's name and declare the security instrument void and unenforceable.

## IV. FACTUAL ALLEGATIONS

**A.     THE BORROWER'S ORIGINAL MORTGAGE LOAN**

9.       On September 6, 2002, Ramon A. Hernandez (the "Hernandez") entered into a mortgage transaction with the original lender Banco Popular, N.A. ("Banco Popular") for a $91,200.00 purchase money mortgage loan secured by the Property. The $91,200.00 note was secured by a deed of trust ("Deed of Trust") on the Property in favor of the Banco Popular.  Hernandez's wife, Norma E. Hernandez, was not a borrower but she did sign the Deed of Trust "pro forma." Together, the mortgage note and Deed of Trust are referred to herein as the "Loan."  The Deed of Trust was filed in the Harris County Property Records as No. W090540. *See* Exhibit 1 – 2002 Deed of Trust, attached and incorporated by reference. At the Loan's closing, Hernandez obtained title to the Property through a warranty deed filed in the Harris County Property Records as No. W090539. *See* Exhibit 2 – 2002 Warranty Deed, attached and incorporated by reference.

**B.     BANK FORECLOSURE ACTIVITY ON THE LOAN**

10.     Public documents indicate that Hernandez defaulted on the Loan in 2010. There was a notice of foreclosure sale filed in 2010.  Exhibit 3 – November 15, 2010 Notice of Sale, attached and incorporated by reference.  The notice states that PHH is the owner and mortgage servicer of the Loan.

11.     Despite this notice of sale, no foreclosure sale actually took place in 2010 or since.

**C.     HOA FORECLOSURE ACTIVITY ON THE LOAN**

12.     On November 16, 2018, the Meadow Village HOA ("HOA") filed a lawsuit against Hernandez for past-due HOA assessments. A default judgment was rendered in favor of the HOA on July 22, 2019.  On November 18, 2019, the 151st Judicial District Court of Harris County, Texas issued a decree of sale allowing the HOA to foreclose on the Property in satisfaction of the

judgment. *See* Exhibit 4 – Constables' Deed to Kafi, attached and incorporated by reference.  On February 4, 2020, the Constable's Office conducted a sale of the Property, and the highest bidder was Kafi for $14,000.  *See id.*  Kafi has owned the Property since the execution sale and the Deed of Trust is now clouding title to Kafi's Property.

**D.**    **RECORDED ASSIGNMENTS**

13.     A public document states that on September 19, 2002, for "Valuable Consideration" Banco Popular assigned the Loan to Cendant Mortgage Corporation.   Exhibit 5 – September 2002 Assignment, attached and incorporated by reference.

14.     A public document states that on November 5, 2020 for "Good and Valuable Consideration" PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation assigned the Loan to New Residential Mortgage LLC. Exhibit 6 – November 2020 Assignment, attached and incorporated by reference.

**V.**
**FIRST CAUSE OF ACTION**: Declaratory Judgment of Lack of Standing to Foreclose
Against all Defendants

15.     Kafi hereby adopts by reference each and every paragraph above as if fully and completely set forth herein.

16.     A controversy exists whether any of the Defendants are the current valid holders or owners of the Loan with standing to foreclose under the Deed of Trust and Texas law.

17.     The Court is vested with the power to declare and adjudicate the rights and other legal relationships of the parties to this action.  Each of the Defendants' status will determine the rights and duties between Kafi and the Defendants as it relates to the Loan and the Property. Therefore, Kafi, as owner of the Property by Constable's Deed, is a proper party to seek a declaratory judgment to resolve these issues.

18.     Kafi seeks the following declarations:

    a.   the Defendants does not have legal or contractual standing conduct a foreclosure of the Property under the Loan;

    b.   there is no complete and unbroken chain of assignments and transfers of the Loan or Loan documents from the original lender, Banco Popular, to New Residential;

    c.   Not all assignments and transfers of the Loan were recorded in the public records in violation of Tex. Loc. Gov't Code section 192.007;

    d.   the Deed of Trust is null and void and of no force and effect; and

    e.   Any other declarations in Kafi's favor necessary to fully resolve the dispute between the parties.

19.     Kafi pleads the discovery rule, which tolls the Texas statute of limitations applicable to this claim. Although Kafi exercised reasonable diligence in attempting to discover a broken chain of assignments and transfers of the Loan, its legal injury was inherently un-discoverable due to Defendants' conduct, and application of the discovery rule would not disserve public policy.

## VI.
### SECOND CAUSE OF ACTION: Declaratory Judgment on the Statute of Limitations to Foreclose Against all Defendants

20.     This claim and the allegations made in this section are brought in the alternative to Kafi's claim that Defendants lacks legal standing to foreclose.

21.     Defendants presently claim the power of sale under the Deed of Trust and Texas law. However, even if Defendants have an interest in the Loan and a secured interest in the Property, any future foreclosure sale would be void as time-barred. Therefore, the Deed of Trust must be declared invalid and void.

22.     Tex. Civ. Prac. & Rem. Code §16.035 states that a foreclosure sale must take place within four years of accrual.  Under Texas case law interpreting section 16.035, the four-year limitations period to conduct a judicial or non-judicial foreclosure under a security instrument containing an optional acceleration clause accrues when the lender accelerates the loan.

23.     The Deed of Trust contains an optional acceleration clause.

24.     These allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: notice of acceleration was sent to the borrowers on November 15, 2010. The foreclosure action accrued on November 15, 2010.  *See* Exhibit 3.  No non-judicial foreclosure or suit for judicial foreclosure, including any applicable tolling, occurred within four years of November 15, 2010, including any applicable tolling.

25.     These allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: The November 15, 2010 acceleration was preceded by a notice of intent to accelerate sent to the borrowers.

26.     Kafi pleads the discovery rule, which tolls the Texas statute of limitations applicable to this claim. Although Kafi exercised reasonable diligence in attempting to discover a claim under limitations, its legal injury was inherently un-discoverable due to Defendants' conduct, and application of the discovery rule would not disserve public policy.

## VII.
## THIRD CAUSE OF ACTION:  Quiet Title Against all Defendants

27.     Kafi hereby adopts by reference each and every paragraph above as if fully and completely set forth herein.

28.     Kafi has an ownership interest in the Property by virtue its Constable's Deed.

29.     Kafi's ownership interest is superior to Defendants' claim to the power of judicial and non-judicial sale under the Loan and Loan documents.

30.     Defendants' claim to the power of judicial and non-judicial sale under the Loan and Loan documents, while it may be valid on its face, is in fact invalid and void due to lack of legal and contractual standing and, alternatively, due to expiration of the statute of limitations to foreclose.

31.     Kafi pleads the discovery rule, which tolls the Texas statute of limitations applicable to this claim. Although Kafi exercised reasonable diligence in attempting to discover invalidities in the Loan and Loan documents, its legal injury was inherently un-discoverable due to Defendants' conduct, and application of the discovery rule would not disserve public policy.

## VIII.
## ATTORNEY FEES

32.     Kafi hereby adopts by reference each and every paragraph above as if fully and completely set forth herein.

33.     As a result of the acts and omissions of Defendants, as specifically set forth herein, it was necessary for Kafi to secure counsel to present and prosecute this matter on its behalf.

34.     Kafi has retained the services of the undersigned counsel of record, and accordingly, Kafi sues for the recovery of reasonable attorney fees pursuant to Tex. Civ. Prac. & Rem. Code §37.009.

## IX.
## STATEMENT REGARDING RELIEF SOUGHT

35.     As required by Tex. R. Civ. P. 47(c), Kafi states that it seeks non-monetary relief and monetary relief of less than $200,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kafi, Inc. asks for the following, in addition to what may be requested above, for each Cause of Action to be awarded:

- Judgment in favor of Kafi on all counts;

- An award of Kafi's reasonable attorney's fees and costs under Tex. Civ. Prac. and Remedies Code §§ 37.009;

- For Declaratory Relief as specified above, and the following:
  a. Kafi is the prevailing party;
  b. The Deed of Trust is null and void and of no effect;
  c. No defendant has an enforceable lien interest against the Property;
  d. No defendant has an enforceable unsecured interest in the Note;
  e. Determines all adverse claims to the real property in this proceeding;
  f. Kafi is entitled to the exclusive fee simple ownership of the Property;
  g. Defendant, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the Property or any part of the Property;
  h. In the alternative, that Kafi is entitled to the equitable right of redemption.

- After trial or hearing on the merits, Kafi requests a **permanent injunction** forever preventing interference with Kafi's status as superior title-holder;

- All such relief to which Kafi deems itself entitled.

**TRIAL BY JURY**: Kafi requests a trial by jury and will tender the fee for such, if any, as required by the Court.

Respectfully submitted,

**Jeffrey Jackson & Associates, PLLC**

By. /s/ Jeffrey C. Jackson
    Jeffrey C. Jackson
    SBOT # 24065485
    2200 N. Loop West, Ste. 108
    Houston, TX 77018
    Tel. 713-861-8833
    Fax.713-682-8866
    jeff@jjacksonllp.com
    ATTORNEY FOR PLAINTIFF

8

022501 9 4

**2021-23625 / Court: 152**

Return To: W020540

Banco Popular, N. A.
2001 Bishops Gate Blvd.
Mount Laurel, NJ 08054

Hold-Charter Title Company-FB  09/19/02 101928923 W090540  $45.00

Prepared By:
Lisa Alhabshi, 3000
Leadenhall Road Mount
Laurel, NJ 08054

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

Loan #: ████6242

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated September 6th, 2002 ,
together with all Riders to this document.
**(B) "Borrower"** is Ramon A Hernandez, A MARRIED PERSON

Joined proforma by wife, Norma E. Hernandez

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is Banco Popular, N. A.

Lender is a Organization
organized and existing under the laws of United States of America

**TEXAS**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3044 1/01

-6(TX) (0005)
Page 1 of 16  Initials: RAH N.EH
VMP MORTGAGE FORMS - (800)521-7291

Original

EXHIBIT 1

Lender's address is 3000 Leadenhall Road Mount Laurel, NJ 08054

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is Burke, Wilson, Castle, Daffin & Frappier

. Trustee's address is

15000 Surveyor Boulevard, Addison, TX 75001

(E) "Note" means the promissory note signed by Borrower and dated September 6th, 2002 .
The Note states that Borrower owes Lender Ninety-One Thousand Two Hundred Dollars and
Zero Cents                                                                      Dollars
(U.S. $91,200.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 1st, 2032 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP ®-6(TX) (0005)          Page 2 of 16          Initials: R.A.bf          Form 3044  1/01
N-Z.l



Original

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY      of      ~~FORT BEND~~ *Harris* :

[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

Lot 22, Block 6 Meadow Village Sec. 1

Parcel ID Number:                          which currently has the address of
12314 ASHLING DRIVE                                           [Street]
STAFFORD                           [City], Texas  77477        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.



-6(TX) (0005)                    Page 3 of 16              Initials: _RAH_ _NEH_           Form 3044  1/01

Original

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: RAH
NEH

**Original**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



VMP ®-6(TX) (0005)          Page 5 of 16          Initials: R A M  N E H          Form 3044   1/01

Original

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(TX) (0005)                         Page 6 of 16            Initials: KAH  NEH         Form 3044   1/01

Original

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP -6(TX) (0005).01                Page 7 of 16           Initials: *RBH*          Form 3044  1/01

*NEM*

Original

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(TX) (0005).01                              Page 8 of 16                  Initials: _R A H_                    Form 3044   1/01

                                                                                _N E H_

<span style="float:right">Original</span>

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

VMP®-6(TX) (0005)                          Page 9 of 16                Initials: *R A H*            Form 3044   1/01

*N E H*

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

 -6(TX) (0005)

Page 10 of 16

Initials: 

Form 3044  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of such evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

Initials: _R A H_

_N E H_

-6(TX) (0005)                    Page 14 of 16                    Form 3044   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Ramon A Hernandez*   (Seal)
                                  Ramon A Hernandez          -Borrower

_____     *Norma E. Hernandez*   (Seal)
                                  Norma E. Hernandez         -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                                  -Borrower

UNOFFICIAL COPY

VMP-6(TX) (0005)          Page 15 of 16          Form 3044   1/01

**STATE OF TEXAS**
County of FORT BEND

Before me                                                    on this day personally appeared
. Ramon A Hernandez   and Norma E. Hernandez

known to me (or proved to me on the oath of {R.H. # ███████- 277
or through Drivers lic #   { N.H # ███████ 390  ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 06th / 6TH day of September, 2002

(Seal)

Notary Public

FRANZ POPPE
Notary Public, State of New York
No. 41-4693439
Qualified in Queens County
Commission Expires May 30, 31, 2003

My Commission Expires: 05/31/2003

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 06th day of September, 2002 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to Banco Popular, N. A.

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at:
12314 ASHLING DRIVE, STAFFORD, TX 77477

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the COVENANTS, CONDITIONS AND RESTRICTIONS .

(the "Declaration"). The Property is a part of a planned unit development known as MEADOW VILLAGE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 1/01
Page 1 of 3          Initials: *RA H*
⑩-7R (0008)          VMP MORTGAGE FORMS - (800)521-7291

*NE H*



**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: *RAH*

*NEH*

-7R (0008)                    Page 2 of 3                    Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

*Ramon A Hernandez* (Seal)                                    _____ (Seal)
Ramon A Hernandez          -Borrower                                                    -Borrower

*Norma E. Hernandez* (Seal)                                  _____ (Seal)
Norma E. Hernandez         -Borrower                                                    -Borrower

_____ (Seal)                             _____ (Seal)
                           -Borrower                                                    -Borrower

_____ (Seal)                             _____ (Seal)
                           -Borrower                                                    -Borrower

RECORDER'S MEMORANDUM
ALL BLACKOUTS, ADDITIONS AND CHANGES
WERE PRESENT AT THE TIME THE INSTRUMENT
WAS FILED AND RECORDED.

VMP®-7R (0008)                    Page 3 of 3                    Form 3150 1/01

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris
County, Texas on



SEP 19 2002

*Beverly B. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS



W090539

**2021-23625 / Court: 152**

Warranty Deed with Vendor's Lien

**Date:** *Sept 10, 2002*

Hold-Charter Title Company-FB

**Grantor:** Camille V. Martinez

09/19/02  101928922  W090539  $13.00

**Grantor's Mailing Address:**

Camille V. Martinez
*5401 Chimney Rock #1062*
*Houston, TX 77081*
*Harris* County

**Grantee:** Ramon A. Hernandez

**Grantee's Mailing Address:**

Ramon A. Hernandez
*12314 Ashling*
*Houston TX 77477*
*Harris* County

**Consideration:**

Cash and a note of even date executed by Grantee and payable to the order of Banco Popular, N.A. in the principal amount of NINETY-ONE THOUSAND TWO HUNDRED AND NO/100 DOLLARS ($91,200.00). The note is secured by a first and superior vendor's lien and superior title retained in this deed in favor of Banco Popular, N.A. and by a first-lien deed of trust of even date from Grantee to Burke, Wilson, Castle, Daffin & Frappier, trustee.

**Property (including any improvements):**

Lot Twenty-two (22), in Block Six (6), of Meadow Village, Section One (1), an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 278, Page 104 of the Map Records of Harris County, Texas.

**Reservations from Conveyance:**

None

**Exceptions to Conveyance and Warranty:**

Liens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for

EXHIBIT 2

2002, which Grantee assumes and agrees to pay, but not subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantor assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

Banco Popular, N.A., at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of Banco Popular, N.A. and are transferred to Banco Popular, N.A. without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.


_____
Camille V. Martinez

STATE OF TEXAS              )

COUNTY OF _Fort Bend_      )

    This instrument was acknowledged before me on _____9-13_____, 2002, by Camille V. Martinez.



_____
Notary Public, State of Texas

**MARY JEAN MCARTHUR**
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 8, 2006

PREPARED IN THE OFFICE OF:

Burton & Johnson, P.C.
4265 San Felipe #350
Houston, Texas 77027
GF# 02250194 MM

AFTER RECORDING RETURN TO:

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

**SEP 19 2002**

_Beverly B. Kaufman_
COUNTY CLERK
HARRIS COUNTY, TEXAS

PHH MORTGAGE CORPORATION (PHH)
HERNANDEZ, RAMON A. AND NORMA E.
12314 ASHLING DRIVE, STAFFORD, TX 77477

***PMI ***LOAN_AGENCY_LOAN_NUM***
Our File Number 10-003208

## NOTICE OF TRUSTEE'S SALE

WHEREAS, on September 6, 2002, RAMON A HERNANDEZ, A MARRIED PERSON JOINED PROFORMA BY WIFE, NORMA E. HERNANDEZ, as Grantor(s), executed a Deed of Trust conveying to BURKE, WILSON, CASTLE, DAFFIN & FRAPPIER, as Trustee, the Real Estate hereinafter described, to BANCO POPULAR, N.A. in payment of a debt therein described. The Deed of Trust was filed in the real property records of **HARRIS** COUNTY, TX and is recorded under Clerk's File/Instrument Number W090540, to which reference is herein made for all purposes.

WHEREAS, default has occurred in the payment of said indebtedness, and the same is now wholly due, and the owner and holder has requested to sell said property to satisfy said indebtedness;

WHEREAS, the undersigned has been appointed Substitute Trustee in the place of said original Trustee, upon contingency and in the manner authorized by said Deed of Trust; and

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on TUESDAY, **December 7, 2010** between ten o'clock AM and four o'clock PM and beginning not earlier than 1:00 P.M. or not later than three hours thereafter, I will sell said Real Estate at the County Courthouse in **HARRIS** COUNTY, TX to the highest bidder for cash. The sale will be conducted in the area of the Courthouse designated by the Commissioners Court, of said county, pursuant to Section §51.002 of the Texas Property Code as amended; if no area is designated by the Commissioners' Court, the sale will be conducted in the area immediately adjacent (next) to the location where this Notice of Trustee's Sale was posted.

Said Real Estate is described as follows: In the County of Harris, State of Texas:

LOT TWENTY-TWO (22), IN BLOCK SIX (6) OF MEADOW VILLAGE, SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 278, PAGE 104 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

| | |
|---|---|
| Property Address: | 12314 ASHLING DRIVE<br>STAFFORD, TX 77477 |
| Mortgage Servicer: | PHH MORTGAGE CORPORATION |
| Noteholder: | PHH MORTGAGE CORPORATION<br>2001 BISHOPS GATE BLVD.<br>ATTN: MAIL STOP SV-01<br>MOUNT LAUREL, NEW JERSEY 08054 |

The Mortgage Servicer is authorized to represent the Noteholder by virtue of a servicing agreement with the Noteholder. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

WITNESS MY HAND this day November 15, 2010.

SUBSTITUTE TRUSTEE
CHRISTINE WHEELESS OR BRIAN MIDDLETON OR
KIRK A. SCHWARTZ
c/o Shapiro Schwartz, LLP
5450 NW Central Drive, Suite 307
Houston, TX 77092
713-462-2565

EXHIBIT 3

RP-2020-102642  03/05/2020  ER  $20.00

# 2021-23625 / Court: 152

### Deed under Execution and Order of Sale

NOTICE OF CONFIDENTIALITY RIGHTS:   IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

(Language pursuant Section 11.008 of the Texas Property Code)
****

**Date:**            February 4th, 2020

**Grantor(s):**      Harris County, Texas, Precinct 4 Constable Mark Herman

**Grantee(s):**      KAFI, INC.

**Grantee(s) Mailing Address:** 9894 BISSONNET ST., #250, HOUSTON, TEXAS 77036

**Consideration/High Bid:** ($14,000.00) FOURTEEN THOUSAND and 00/100 Dollars.

**Constable:**       Harris County, Texas, Precinct 4 Constable Mark Herman

**Levy Date:**       December 2nd, 2019

**Newspaper:**       The Daily Court Review

**Date of Sale:**    February 4th, 2020

**Defendant(s):**    Ramon A. Hernandez

**Land and Premises:**
Lot Twenty-Two (22) in Block Six (6) of Meadow Village Section One (1) an addition in Harris County, Texas according to the map or plat thereof recorded in Volume 278, Page 104 of the Map Records of Harris County Texas (the "Property") also known as 12314 Ashling Drive, Stafford, Harris County, Texas 77477

**Execution and Order of Sale:**
That an order of sale issued on the November 18th, 2019 out of the 151st Judicial District Court, Harris County, Texas, pursuant to a judgment and decree of sale in Cause No. 2018-82746 Meadow Village HOA, Inc., VS. Ramon A. Hernandez rendered on: July 22nd, 2019

By virtue of that certain Order of Sale described above and further directed and delivered to me as Constable, commanding me to seize and sell the land and premises described in the Order of Sale. on the above stated Levy Date I did advertise for sale the said land and premises described in the Order of Sale, by having a notice of the sale published in the English language once a week for three consecutive weeks preceding the Date of Sale in the above-described Newspaper, a newspaper published in Harris County, Texas, the first publication appearing not less than twenty-one days immediately preceding the day of the sale, containing a statement of the authority by virtue of which the sale is to be made, the time of levy, time and place of sale; also a brief description of the property to be sold by stating the number of acres and the original survey;

if the property was located in a platted subdivision or addition the name by which the land is generally known with reference to that subdivision or addition; or by adopting the description of the land as contained in the judgment. I also mailed a copy of the notice of sale to the last known address of the above named Defendant(s).

On the Date of Sale stated above, between the hours of ten o'clock a.m. and four o'clock p.m., I sold the above described land and premises at public venue in the County of Harris, State of Texas, at the door of the Court House of said Harris County, Texas and said land and premises were struck off to the highest bidder, for the sum stated above and the high bidder being the above-named Grantee(s).

Revised 3/2/2016                     Cause Number:  2018-82746                     Page 1 of  2

EXHIBIT 4

WHEREAS the Grantee(s), KAFI, INC., exhibited to me an unexpired written statement issued to the person in the manner prescribed by Section 34.015, Texas Tax Code, showing that the person has no ad valorem taxes owed by the person to Harris County, or any school district or municipality having territory in Harris County, or in the alternative exhibited to me the written registration statement issued to the person in the manner prescribed by Section 34.011, Tax Code, showing that the person is a registered bidder; and

Accordingly, and in consideration of the payment of the sum described above, the receipt of which is hereby acknowledged, I hereby convey to the Grantee(s) all of the right, title, and interest owned by the Defendant(s) in the property described above.

This deed is given expressly subject to the right of the Defendants to redeem the land and premises, if allowed, within the time and in the manner provided by law.

IN TESTIMONY WHEREOF, I have hereunto set my hand, this ___26___ day of __February__, _2020_

**Mark Herman, Constable**
Precinct 4 Harris County, Texas

| | |
|---|---|
| The State Of Texas | § |
| | § |
| County Of Harris | § |

Before Me, the undersigned Notary Public in and for the State of Texas, on this day personally appeared Mark Herman, Constable Precinct 4 Harris County, Texas, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration, and in the capacity therein expressed.

GIVEN under my hand and seal of office, this ___26___ day of __February__, _2020_

NOTARY PUBLIC, State of Texas

Martha G Balderas
Notary Public, State of Texas
My Comm. Exp. 01/31/2024
Notary ID 13049517-8

Return to:
Purchaser
KAFI, INC.
~~9894 BISSONNET ST., #250~~
~~HOUSTON, TEXAS 77036~~
PO Box 79581
Houston Tx 77279

RP-2020-102642

RP-2020-102642

RP-2020-102642

# Pages 3

03/05/2020 01:58 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees   $20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

## 2021-23625 / Court: 152

W524770
09/25/03 200104898        $9.00

RECORD AND RETURN TO:                    ASSIGNMENT OF DEED        LOAN #: ▓▓▓▓5242
CENDANT MORTGAGE CORPORATION             OF TRUST OR MORTGAGE       NAME: Hernandez
3000 LEADENHALL ROAD                                                STATE OF: TX
P.O. BOX 5449                                                       COUNTY OF: HARRIS
MT. LAUREL, NJ 08054
SECURITY #: 2QP-2002-0522
ID: 27-125064-RH
KNOW ALL MEN BY THESE PRESENTS, THAT BANCO POPULAR, N.A., 3000 LEADENHALL ROAD, MT. LAUREL,
NJ, 08054, A NATIONAL BANKING ASSOCIATION EXISTING UNDER THE LAWS OF THE UNITED STATES FOR
VALUABLE CONSIDERATION, THE RECEIPT OF WHICH HEREBY ACKNOWLEDGED, DOES HEREBY GRANT, BARGAIN,
SELL, ASSIGN AND TRANSFER TO:
CENDANT MORTGAGE CORPORATION
3000 LEADENHALL ROAD
P.O. BOX 5449
MT. LAUREL, NJ 08054

THAT CERTAIN PROMISSORY NOTE AND DEED OF TRUST OR MORTGAGE DESCRIBED AS FOLLOWS:
NOTE AND DEED OF TRUST OR MORTGAGE DATED: 09/06/2002
AMOUNT:   91,200.00                       EXECUTED BY: Ramon A Hernandez
                                          NORMA E. Hernandez

CLERKS FILE OR INSTRUMENT NO: W 090540      RECORDED DATE: 9-19-2002
BOOK: 556-16                                 VOLUME:                    PAGE: 1764
ADDRESS:   12314 ASHLING DR, STAFFORD, TX 77477
DESCRIBING LAND THEREIN AS DESCRIBED IN DEED OF TRUST/MORTGAGE REFERRED TO HEREIN.

TOGETHER WITH THE NOTE THEREIN OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH
INTEREST AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST OR MORTGAGE.
DATED:  09/19/2002                            BANCO POPULAR, N.A.
                                             3000 LEADENHALL ROAD
                                             MT. LAUREL, NJ 08054

WITNESSED BY:                             BY:
              abraham rodriguez              rita calendo
                                            ASSISTANT VICE-PRESIDENT

PREPARED BY:                              BY:
              DEANNE ROBERTS                 TREMAYNE WOOD
                                            ASSISTANT SECRETARY

STATE OF NEW JERSEY, COUNTY OF BURLINGTON,
ON 09/19/2002, BEFORE ME, THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID STATE AND COUNTY,
PERSONALLY APPEARED rita calendo AND TREMAYNE WOOD PERSONALLY KNOWN TO ME OR PROVED TO ME ON
THE BASIS OF SATISFACTORY EVIDENCE TO BE ASST VICE PRES. AND ASSISTANT SECRETARY OF THE
NATIONAL BANKING ASSOCIATION THAT EXECUTED THE WITHIN INSTRUMENT, ON BEHALF OF THE NATIONAL
BANKING ASSOCIATION THEREIN NAMED, AND ACKNOWLEDGED TO ME THAT SUCH  NATIONAL BANKING
ASSOCIATION EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR RESOLUTIONS OF ITS BOARD
OF DIRECTORS.  WITNESS MY HAND AND OFFICIAL SEAL IN THE STATE AND COUNTY LAST AFORESAID.
                     TITI UDOH
                     NOTARY PUBLIC OF NEW JERSEY
                     MY COMMISSION EXPIRES  02/23/2004

           NOTARY PUBLIC

           TITI UDOH
      NOTARY PUBLIC OF NEW JERSEY
   My Commission Expires Feb. 23, 2004

                                          FILE FOR RECORD
                                              8:00 AM

                                          MAR 25 2003

                                          Beverly B. Kaufman
                                      County Clerk, Harris County, Texas

                                                            EXHIBIT 5

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

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

MAR 25 2003

COUNTY CLERK
HARRIS COUNTY, TEXAS

RP-2020-542176

# 2021-23625 / Court: 152

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **PHH MORTGAGE CORPORATION F/K/A CENDANT MORTGAGE CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, (ASSIGNOR)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon, to **NEW RESIDENTIAL MORTGAGE LLC, WHOSE ADDRESS IS 1345 AVENUE OF THE AMERICAS, 45TH FLOOR, NEW YORK, NY 10105, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust bearing the date 09/06/2002, was executed by **RAMON A HERNANDEZ** and recorded as **Filing # W090540**, in the records of Real Property of **HARRIS** County, **Texas**.

**IN WITNESS WHEREOF,** this Assignment is executed **this 05th day of November in the year 2020.**
**PHH MORTGAGE CORPORATION F/K/A CENDANT MORTGAGE CORPORATION**



**JEANETTE ROIKES**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 05th day of November in the year 2020, by Jeanette Roikes as VICE PRESIDENT of PHH MORTGAGE CORPORATION F/K/A CENDANT MORTGAGE CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



**MELISSA MAY**
**COMM EXPIRES: 10/27/2023**

MELISSA MAY
Notary Public - State of Florida
Commission # GG 926443
My Comm. Expires Oct 27, 2023
Bonded through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: PHH Mortgage Corporation, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683
PHH03 416880894 PHH03-NRMSHELL0901    DOCR T052011-12:17:28 [C-1] EFRMTXG1

*D0062547050*

EXHIBIT 6

RP-2020-542176

\# Pages 2

11/06/2020 09:39 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

CHRIS HOLLINS

COUNTY CLERK

Fees   $18.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

UNOFFICIAL COPY

RP-2020-542176